FILED
2013 JUN 20  PM 4: 39
CLERK [illegible]
WESTERN [illegible] OF TEXAS
BY_____ QW

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MIKE BENAVIDES, VICTORIA BRANNING, WALTER BRANNING, KURTIS BROWN, THOMAS BRYAN, PETE DIDONATO, SUSAN ERWIN, BRYAN FITZPATRICK, CATHERINE GERAC, CAROL PIERCE, COREY RICKETSON, TEMPLE THOMAS, GARY WADHAM, GREGORY WELLER, DANI WINKLER, MICHAEL WRIGHT, GLENN ANDERSON, PAUL ALVAREZ, JANELLE BOONE, MICHAEL BROADWATER, JOHNNIE HALL, ERIC JAKUBAUSKAS, MARK KARONIKA, DAVID LINDSLEY, JASON MARTIN, MARK MONTGOMERY, GLEN WOSKY, MICHAEL WRIGHT, AMELIA ZAPATA, LANDON WILLHOITE, AND EDWARD JOHNS, | § § § § § § § § § § § § § § § § § § § § | |
| PLAINTIFFS, | § § | |
| V. | § § | CAUSE NO. A-11-CV-438-LY |
| CITY OF AUSTIN, | § § | |
| DEFENDANT. | § | |

## MEMORANDUM OPINION AND ORDER
## ON MOTIONS FOR ENTRY OF JUDGMENT AFTER JURY TRIAL

Before the court are Plaintiffs' Motion for Entry of Partial Judgment on Jury Verdict,

Renewed Motion for Partial Judgment as a Matter of Law, Request for a New Trial, and Motion to

Reconsider Summary Judgment, filed December 10, 2012 (Clerk's Doc. No. 127) and Defendant's

Response to Plaintiffs' Motion for Partial Judgment on Jury Verdict, Renewed Motion for Partial

Judgment as a Matter of Law, Request for New Trial, and Motion to Reconsider Summary Judgment,

filed December 17, 2012 (Clerk's Doc. No. 128).  Also before the court are Defendant's Motion for

Entry of Judgment and Renewed Motion for Judgment as a Matter of Law, filed December 10, 2012

(Clerk's Doc. No. 126) and Plaintiffs' Response to Defendant's Motion for Entry of Judgment and Renewed Motion for Judgment as a Matter of Law, filed December 17, 2012 (Clerk's Doc. No. 129). The court has also received the parties' joint Advisory to the Court, filed December 20, 2012 (Clerk's Doc. No. 130) and Plaintiffs' February 7, 2013 letter regarding supplemental authority in support of Plaintiffs' motion.

Following a jury trial on all issues of liability in this case, the parties present the court with opposing post-verdict motions seeking entry of judgment in their favor and other relief. Having considered the motions, responses, related filings, the entire case file, the evidence adduced at trial, and the governing law, the court is of the opinion that the jury's findings should be adopted by the court and judgment rendered in favor of Plaintiffs.

## I.  Procedural Background

Plaintiffs—a group of current and former employees of the City of Austin's Emergency Medical Services Department ("EMS")—originally brought this action on August 27, 2007, in state district court, against their employer, the City of Austin. *See Benavides v. The City of Austin, Texas*, No. D-1-GN-07-001263 (201st Dist. Ct., Travis County, Tex.). The City removed the case to this court on May 25, 2011. Plaintiffs filed a separate but related action in state court on May 13, 2011, which the City removed to this court on June 8, 2011. *See Alvarez v. City of Austin, Texas*, No. D-1-GN-11-001429 (200th Dist. Ct., Travis County, Tex.). This court consolidated the two cases on August 16, 2012. After consolidation, Plaintiffs filed a Third Amended Complaint (Clerk's Doc. No. 85), containing the entirety of their allegations.

Plaintiffs contend the City willfully violated the overtime requirements of the Fair Labor Standards Act (the Act) by failing to compensate them at one and one-half times their regular rate for

hours over 40 worked in each work week. *See* 29 U.S.C. § 207(a). Plaintiffs seek declaratory and injunctive relief, back pay for underpayment of wages, an equal amount as liquidated damages, attorney fees, and costs.

The City admits Plaintiffs are employees covered by the Act who have worked in excess of 40 hours per week during one or more weeks during the relevant period of employment. However, the City asserts Plaintiffs are exempt from the Act's overtime requirements under the statutory exemptions for employees working in a *bona fide* executive or administrative capacity. *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.708. This court has jurisdiction over the federal question presented by Plaintiffs' claims. 28 U.S.C. § 1331; 29 U.S.C. § 216.

Before consolidation, the City filed three motions for summary judgment. The first motion sought summary judgment on statute-of-limitations grounds, arguing the suit should be dismissed because Plaintiffs did not serve the City with process until April 29, 2011, approximately four years after they filed their state-court petition. The court granted the motion in part, ordering that Plaintiffs take nothing on their claims accruing before April 26, 2009, if any violation of the City was found to be nonwillful, or April 26, 2008, if any violation of the City was found to be willful.[1]

The City then filed identical motions for summary judgment in the two cases, seeking judgment as a matter of law. The City argued that no genuine dispute of material fact remained on the question of whether it properly classified Plaintiffs as exempt executives and administrators and

---

[1] Any action for unpaid overtime compensation arising under the Fair Labor Standards Act must be commenced within two years after the cause of action accrued or within three years if there is a willful violation of the Act. 29 U.S.C. § 255(a). Under the Act, a separate cause of action accrues at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed. *Halferty v. Pulse Drug Co.*, 821 F.2d 261, 271 (5th Cir. 1987).

there was no evidence of a willful violation of the Act. The court granted the motion in part and dismissed the claims of two Plaintiffs: Eric Jakubauskas, in his role as Special Operations Commander, and Mark Montgomery, in his role as Emergency Management Commander. The court concluded there was no evidence of a willful violation of the Act and dismissed Plaintiffs' claims to that effect. The court's order thereby defined the relevant statutory period as beginning April 26, 2009, and continuing thereafter.

After the court's order on the motions for summary judgment, all remaining Plaintiffs in this case are current or former "Field Commanders" with EMS, except for Scott Lindsley, who serves as EMS's "Fleet and Facilities Commander." The claims of these Plaintiffs proceeded to trial. On the parties' joint motion, the court bifurcated the case into separate liability and damages phases. From November 5, 2012, to November 13, 2012, the court held a jury trial on the City's liability for Plaintiffs' claimed overtime compensation. The parties waived their right to a jury with respect to damages and agreed to present all damages issues to the court if trial resulted in a finding of the City's liability.

At trial, the City claimed the "Field Commanders" are exempt from overtime compensation because they are *bona fide* administrators, executives, or a combination of the two. *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.708. The City claimed Lindsley is exempt as a *bona fide* administrator only. The jury returned its verdict on November 15, 2012. The verdict resolved various fact issues essential to the ultimate legal question of whether Plaintiffs are exempt employees under the Act. The majority of the jury's findings favor the City's position that Plaintiffs are exempt. Yet one critical jury finding favors Plaintiffs' position that they are nonexempt. At the close of the trial, the court ordered the parties to file post-verdict motions for entry of judgment.

4

The parties' opposing post-verdict motions seek judgment on the jury verdict as to those findings that favor their respective positions and judgment as a matter of law on the issues the jury resolved against them. Plaintiffs also request reconsideration of the court's summary judgment against Plaintiffs Jakubauskas and Montgomery and, alternatively, a new trial. The court first addresses the parties' motions for judgment as a matter of law.

## II. Legal Standard

A motion for judgment as a matter of law in an action tried by a jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict. *Allstate Ins. Co. v. Receivable Fin. Co., LLC*, 501 F.3d 398, 405 (5th Cir. 2007). A motion for judgment as a matter of law should be granted only if "there is no legally sufficient evidentiary basis for a reasonable jury to find for a party" or "the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict." *Id.* (quoting FED. R. CIV. P. 50(a); *Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 392 (5th Cir.2000)).

In considering such a motion, the court must consider all the evidence before the jury. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000). When reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmovant and the court cannot weigh the evidence or make credibility determinations. *Id.* at 151. However, a jury verdict should be overturned "if the jury's factual findings are not supported by substantial evidence or if the legal conclusions implied from the jury's verdict cannot in law be supported by those findings. *Am. Home Assur. Co. v. United Space Alliance, LLC*, 378 F.3d 482, 486–87 (5th Cir. 2004).

### III.  Analysis

*A.*     ***Executive and Administrative Exemptions***

The Act requires employers to compensate covered employees at one and one-half times the regular rate for hours worked in excess of 40 hours during a seven-day workweek.  *Allen v. McWane, Inc.*, 593 F.3d 449, 453 (5th Cir. 2010) (citing 29 U.S.C. § 207(a)).

The Act exempts those employees working in a *bona fide* executive or administrative capacity. *Cheatam v. Allstate Ins. Co.*, 465 F.3d 578, 584 (5th Cir. 2006) (citing 29 U.S.C. § 213(a)(1)).  The decision whether an employee is exempt under the Act is primarily a question of fact.  *Id.*  However, the ultimate decision on exemption is a question of law for the court to decide.  *Lott v. Howard Wilson Chrysler-Plymouth*, 203 F.3d 326, 331 (5th Cir. 2000).  Exemptions are construed narrowly, and the burden of proof lies with the employer.  *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001).  Because the parties agree that Plaintiffs have stated a *prima facie* case of entitlement to overtime compensation, the City bears the burden of proof on the only liability issues in this case: whether Plaintiffs are exempt executives or administrators.  *See id.*

The regulations governing the executive exemption provide that an employee is employed in a "bona fide executive capacity" if the employee:  (1) is "compensated on a salary basis at a rate of not less than $455 per week"; (2) has the "primary duty" of "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof"; (3) "customarily and regularly directs the work of two or more other employees"; and (4) either "has the authority to hire or fire other employees" or the employee's "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."  29 C.F.R. § 541.100(a).

An employee falls within the administrative exemption if: (1) the employee is "compensated on a salary basis at a rate of not less than $455 per week"; (2) the employee has the "primary duty" of "the performance of officer or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) that "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." *Id.* § 541.200(a).

**B.      *Jury Verdict***

The parties stipulated that each Field Commander "customarily and regularly direct[s] the work of two or more employees," thereby agreeing that the Field Commanders satisfy the third element of the executive exemption. *See id.* § 541.100(a)(3). The parties also agree that all Plaintiffs earned more than $455 per week during the relevant period, for purposes of the first element of the executive and administrative exemptions. *See id.* §§ 541.100(a)(1), 541.200(a)(1). Whether any Plaintiff is truly paid on a "salary basis," however, is contested. *See id.* The parties also dispute the remaining elements of the exemptions: (1) whether the Field Commanders' primary duty is management or first response; (2) whether the Field Commanders' suggestions as to hiring and firing are given "particular weight"; (3) whether any Plaintiff has the primary duty of "office or non-manual work"; and (4) whether that primary duty includes "the exercise of discretion and independent judgment" with respect to "matters of significance." *Id.* §§ 541.100(a), 541.200(a).

The court charged the jury with questions tracking the contested elements of the exemptions.[2]

_____

[2]The verdict form and the jury's answers read as follows:

**QUESTION ONE**

Do you find, by a preponderance of the evidence, that Plaintiffs who serve as Field Commanders are paid on a salary basis?

Please answer "Yes" or "No."

Answer:  NO

**QUESTION TWO**

Do you find, by a preponderance of the evidence, that the primary duty of Plaintiffs who serve as Field Commanders is:

(a) Management of Austin-Travis County Emergency Medical Service or a department or subdivision thereof; or

(b) Office or nonmanual work directly related to the management or general business operations of Austin-Travis County Emergency Medical Service or its customers; or

(c) A combination of (a) and (b)?

Please answer "Yes" or "No."

Answer: YES

**QUESTION THREE**

Do you find, by a preponderance of the evidence, that Plaintiffs who serve as Field Commanders have the authority to make suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees that are given particular weight?

Please answer "Yes" or "No."

Answer: YES

**QUESTION FOUR**

Do you find, by a preponderance of the evidence, that primary duty of Plaintiffs who serve as Field Commanders includes the exercise of discretion and independent judgment with respect to matters of significance?

Please answer "Yes" or "No."

Answer: YES

**QUESTION FIVE**

Do you find, by a preponderance of the evidence, that Scott Lindsley is paid on a salary basis?

The jury found that the City failed to prove that Plaintiffs were compensated on a "salary basis." The jury returned a verdict for the City on all other questions, finding that the Field Commanders' primary duty was management of EMS, office or nonmanual work, or a combination of the two; that the Field Commanders have the authority to make suggestions as to hiring, firing, and promotion that are given particular weight; and that the Field Commanders' primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. As to Lindsley, the jury found that his primary duty is office or nonmanual work and that this duty includes the exercise of discretion and independent judgment with respect to matters of significance. Because the City bears the burden to establish each element of the claimed exemptions, a ruling adopting all of the jury's fact findings would result in entry of judgment in Plaintiffs' favor. *See Vela*, 276 F.3d at 666.

---

Please answer "Yes" or "No."

Answer:  NO

**QUESTION SIX**
Do you find, by a preponderance of the evidence, that the primary duty of Plaintiff Scott Lindsley is office or nonmanual work directly related to the management or general business operations of Austin-Travis County Emergency Medical Service or its customers?
Please answer "Yes" or "No."

Answer: YES

**QUESTION SEVEN**
Do you find, by a preponderance of the evidence, that Plaintiff Scott Lindsley's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance?
Please answer "Yes" or "No."

Answer: YES

9

**C.    *Salary Basis***

The City moves for judgment as a matter of law on the salary-basis issue as to all Plaintiffs. The City's motion first argues that the salary-basis issue should not have been presented to the jury. The City believes Plaintiffs admitted they are paid on a salary basis during discovery through their response to the City's request for admissions and that this court granted the City summary judgment on the salary-basis issue prior to trial.  The court has repeatedly rejected this argument, both before, during, and at the close of trial, and again rejects it here.  Plaintiffs' admission that they "earned at least $455 per week in salary" is not an admission that they were paid on a "salary basis," as the term is defined in the governing regulations.  Nowhere in the City's request for admissions did the relevant term of art "salary basis" appear.  Contextually, in the request for admission, "salary" means no more than "pay."  A reasonable person reading the request would not consider it to invoke the language of the Act.  The City seeks a "gotcha," to which it is not entitled.

Nor did the court grant the City summary judgment on the salary-basis issue.  Although Rule 56 permits a party to move for summary judgment on a claim or a part of a claim, the City did not move for summary judgment on a part of its claimed exemption. *See* FED. R. CIV. P. 56(a).  Rather, it moved for complete summary judgment on the basis that no genuine dispute remained as to whether Plaintiffs were exempt under the Act.  As to the majority of Plaintiffs, summary judgment was denied.  When a court denies summary judgment, the claimant still bears the burden of introducing evidence at trial on every essential element of its claim. *See Rivera-Flores v. Puerto Rico Tel. Co.*, 64 F.3d 742, 747–48 (1st Cir. 1995).  The fact that Plaintiffs did not proffer evidence on the salary-basis issues at the summary-judgment stage but defeated the City's motion for summary judgment with evidence of a genuine dispute on the primary-duty issues does not relieve the City of

its burden to prove all elements of its claimed exemptions. The court therefore denies the City's motion for judgment as a matter of law on this basis.

The City also challenges the sufficiency of the evidence to support the jury's finding with respect to the salary-basis issue. Specifically, the City contends the jury's finding cannot stand in light of the City's status as a public employer and the unique regulations governing such employers. *See* 29 C.F.R. § 541.710. This court disagrees.

The jury found that the City failed to prove, by a preponderance of the evidence, that it pays Plaintiffs on a salary basis. An employee is paid on a "salary basis" if the employee "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." *Id.* § 541.602(a). Although employers may, in some circumstances, make deductions from that salary and not lose a claimed exemption,[3] the ultimate question is always whether the employer intended to pay the employee on a salary, as opposed to an hourly, basis. *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,122, 22,177 (Apr. 23, 2004) ("[B]ona fide executives, administrators or professional . . . are not paid by the hour

---

[3]All employers may make deductions when an exempt employee is absent from work "for one or more full days for personal reasons, other than sickness or disability." 29 C.F.R. § 541.602(b)(1). Additionally, deductions may be made for absences of more than one full day "occasioned by sickness or disability" if the deduction is made "in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by such sickness or disability." *Id.* § 541.602(b)(2). Furthermore, "[e]xempt employees need not be paid for any workweek in which they perform no work." *Id.* § 541.602(a). Public employers may deduct pay for absences of less than one full day if the employee "is paid according to . . . a policy or practice established pursuant to principles of public accountability, under which the employee accrues personal leave and sick leave and which requires the public agency employee's pay to be reduced or such employee to be placed on leave without pay . . . when accrued leave is not used by an employee . . . ." *Id.* § 541.710(a).

11

or task, but for the general value of services performed."). The City bears the burden of proof on this issue. *See Vela*, 276 F.3d at 666.

The City fails to convince the court that the evidence introduced at trial so strongly favors the City's position that there is "no legally sufficient evidentiary basis" for the jury's finding. *Allstate Ins. Co.*, 501 F.3d at 405. The evidence presented by the City at trial on the salary-basis issue is scant. In fact, the only affirmative evidence put forth by the City on the issue was the testimony of Sylvia Flores, former assistant director of the City's Human Resources Department.

Flores testified generally that the City maintains a payroll system that reduces all City employees' compensation to an hourly rate in order to track the number of hours worked. Flores also explained the City's policy of public accountability, which requires employees to accrue and use leave time in order to be paid when taking time off work. When questioned on cross examination, Flores agreed that Plaintiffs must work a full 48 hours in a week or use "leave time" in order to receive their full weekly salary. Although this testimony generally comports with the regulatory exceptions governing public employers, the City still must prove Plaintiffs "otherwise satisfy the salary basis requirements" before these exceptions apply. *See* 29 C.F.R. § 541.710(a). Flores's testimony does not provide any evidence that the City intended to treat Plaintiffs any differently than an hourly employee. Nor does the City's motion identify any other evidence to that end.

Rather, the City devotes the majority of its motion to attempting to convince the court that the deductions from Plaintiffs' pay under the City's "zero time," "light duty," and "shift bidding" policies were permitted under the regulatory exceptions for public employers.[4] Again, the City puts the cart

---

[4]"Zero time" refers to the policy that Commanders reporting late to a scheduled shift are not compensated for the amount of time not worked. "Light duty" refers to the policy of placing Commanders on a reduced schedule as a result of an injury or medical condition. Commanders are not compensated for any hours not worked during such an assignment. "Shift bidding" refers to the

before the horse.  Over the course of trial, the City did not produce evidence expressing Plaintiffs'

compensation in any terms other than as an hourly rate.  The EMS pay schedules and pay records all

express Plaintiffs' pay by the hour.  In light of this evidence, the City's "zero-time," "light-duty," and

"shift-bidding" policies, even if permissible exceptions to the salary-basis requirement, nonetheless

reinforce the direct relationship between the number of hours Plaintiffs work and the compensation

they receive.

The fact that the regulations permit the computation of an employee's earnings on an hourly

basis in some instances does not entitle the City to judgment as a matter of law.  The regulations

provide that "[a]n exempt employee's earnings may be computed on an hourly, a daily or a shift basis,

without losing the exemption or violating the salary basis requirement," so long as the "employment

arrangement includes a guarantee of at least the minimum weekly required amount paid on a salary

basis regardless of the number of hours, days or shifts worked . . . ." 29 C.F.R. § 541.604(b).  No

witness testified at trial that Plaintiffs are guaranteed a salary of any kind.  In fact, Flores and all

Plaintiffs testified directly to the contrary.  Furthermore, Assistant Director of Field Operations James

Shamard admitted at trial that the City had made errors by improperly reducing pay to Plaintiffs who

worked fewer than 48 hours in a week.  The jury could have chosen to disbelieve the City's action

was error.

In summary, the court has thoroughly reviewed the record and can find no evidence to suggest

that Plaintiffs' pay is based on any factor other than the number of hours worked.  Because the jury

---

policy that Commanders select their own shifts, which sometimes results in a conflict.  If a
Commander is scheduled to work fewer than the regularly scheduled 48 hours per week due to such
a conflict, the Commander will receive a commensurate reduction in pay.  Under all of these
policies, Commanders may use leave time or work additional hours to receive pay for the full 48
hour work week.

heard no evidence that Plaintiffs were treated any differently than an hourly employee, there was a "legally sufficient evidentiary basis" for finding the City failed to prove the salary-basis element of its affirmative defense. *See Allstate Ins. Co.*, 501 F.3d at 405. Therefore, the City is not entitled to judgment as a matter of law on this issue, and the court will adopt the jury's finding.

**B.      *Primary Duty***

Plaintiffs argue there is insufficient evidence to support the jury finding that Plaintiffs' primary duties are managerial and administrative. Plaintiffs specifically contend they are primarily first responders, not managers and administrators, and therefore entitled to overtime compensation pursuant to the Department of Labor's "first responder" regulation. *See* 29 C.F.R. § 541.3(b). Having considered all of the evidence in the light most favorable to the City, as is required when reviewing a motion for judgment as a matter of law, the court is of the opinion the motion should be denied. *See Reeves*, 530 U.S. at 151.

The regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs." *Id.* § 541.700(a). "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.* The court therefore looks both to the structure of the EMS Department, as well as the various duties and responsibilities of Plaintiffs, in determining whether the jury had a sufficient evidentiary basis for concluding Plaintiffs are primarily managers and administrators.

The City's EMS Department is headed by Director Ernesto Rodriguez, who is the highest ranking departmental official. Assistant Director of Field Operations James Shamard reports to the Director and is responsible for overseeing two Operations Managers, who in turn oversee the Field Commanders. The Field Commanders each supervise 12 to 16 subordinate paramedics, captains, and

14

EMTs in one of six assigned districts. Field Commanders work two 24-hour shifts per week, along with their subordinates, and are the highest ranking officers in the field.

The evidence introduced at trial establishes that there are significant differences between the roles and responsibilities of Field Commanders and their nonexempt subordinates. First, paramedics, captains, and EMTs all drive ambulances, whereas Field Commanders are issued command vehicles that, although equipped with medical equipment, do not have the capacity to transport patients to the hospital. Paramedics are on call for the entirety of their shifts, dispatched to virtually all calls, and have no choice but to respond. Field Commanders, on the other hand, are dispatched only to certain types of calls and always have discretion to take themselves out of service once an ambulance arrives on the scene.[5] Field Commanders also have discretion to self assign to calls and may do so for reasons other than providing medical care. When they do so, they are taken out of the "dispatch matrix" unless they choose to remain available. Importantly, Field Commanders may choose to remove themselves completely from the dispatch matrix, whereas ambulance crews on duty must always be ready to respond.

Field Commanders render medical care much less frequently than the paramedics, captains, and EMTs they supervise. Of the over 100,000 emergency responses by EMS each year, Field Commanders were dispatched to fewer than 3,000 calls and self assigned to only 2,000 more. Despite the fact that 30,000 of these responses were the more serious Priority 1 and Priority 2 calls, Field Commanders were only dispatched as the closest vehicles to these calls between 500 and 800 times per year. Field Commanders were dispatched to cardiac-arrest calls with even less frequency. This data is consistent with Plaintiffs' testimony that, on an average shift, Field Commanders respond to

---

[5]Field Commanders are dispatched to all cardiac-arrest calls, as well as "Priority 1" and "Priority 2" calls if they are nearest to the scene by a predetermined amount of time.

approximately four to six calls, whereas their subordinates respond to approximately 12 to 18 calls. When Field Commanders respond to these calls, it is undisputed that they frequently engage in the same or nearly the same types of duties as medics, such as chest compressions, insertion of intravenous lines, and the administration of medication. However, Field Commanders also frequently perform nonmedical duties such as coordinating resources among emergency-response agencies, directing incoming vehicles and personnel, and arranging for patient transportation.

The evidence also demonstrates that when Field Commanders are not responding to a call, they are responsible for many managerial and administrative duties that are not shared by their subordinates. These duties include ensuring their crews are available and ready to respond to calls, have received adequate training, and have access to functional and adequate medical equipment and ambulances. Field Commanders are also responsible for evaluating personnel performance, responding to community complaints, maintaining personnel records, initiating disciplinary action for violations of EMS operational policies and procedures, and making recommendations on promotions and other personnel actions. Aside from these responsibilities, Field Commanders spend considerable time traveling from station to station to check on, observe, and visit with their crews.

The evidence as to Lindsley, the only Plaintiff who is not a Field Commander, establishes that he is assigned to EMS's Fleet and Maintenance Division, which supports the Field Division. Lindsley is not a part of the dispatch matrix and does not drive the command vehicle issued to Field Commanders. His responsibilities include advising EMS on building and locating new EMS stations, ensuring new EMS vehicles are being designed and constructed pursuant to City requirements, and setting standards and directives as to the EMS fleet. Lindsley testified that he picks up Field Commander shifts "from time to time" and seeks overtime compensation for this work.

Viewing this evidence as a whole, the court is of the opinion there was a sufficient evidentiary basis for the jury to find that the Field Commanders' primary duty is management of EMS, office or nonmanual work, or a combination of the two, and that Lindsley's primary duty is office or nonmanual work. The regulations define "management" as such activities as training employees, directing the work of employees, evaluating the work of employees, determining the materials or techniques to be used, planning and controlling the budget, maintaining records for use in supervision or control, disciplining employees, and apportioning work among employees. *Id.* § 541.102. Administrative duties include work in areas like accounting, insurance, marketing, human resources, labor relations, and database administration. *Id.* § 541.201(b). Field Commanders engage in many of these activities on a daily basis, and EMS documents introduced at trial, which outline job expectations and responsibilities, lend additional support to the jury's conclusion that the City relies on Plaintiffs primarily to manage the large, otherwise unsupervised, field staff for the entire EMS department. *See Dalheim v. KDFW-TV*, 918 F.2d 1220, 1227 (5th Cir. 1990) ("[T]he employee's primary duty will usually be what she does that is of principal value to the employer . . . ."). Lindsley's own testimony was sufficient in itself to establish that he is primarily an administrator.

Plaintiffs argue the first-responder regulation compels a finding to the contrary. This court disagrees. The first-responder regulation alters the primary-duty test as applied to employees engaged primarily in first-response work. *See* 29 C.F.R. § 541.3(b)(1) (providing that executive and administrative exemptions "do not apply to . . . fire fighters, paramedics, emergency medical technicians, ambulance personnel, rescue workers, . . . and similar employees, regardless of rank or pay level, who perform work such as . . . rescuing fire, crime or accident victims . . . ."). The regulation explains that "[s]uch employees do not qualify as exempt executive employees because their primary duty is not management of the enterprise in which the employee is employed or a

17

customarily recognized department or subdivision thereof . . . ." *Id.* § 541.3(b)(2). To that end, "a police officer or fire fighter whose primary duty is to investigate crimes or fight fires is not exempt . . . merely because the police officer or fire fighter also directs the work of other employees in the conduct of an investigation or fighting a fire." *Id.*

In other words, the first-responder regulation alters the primary-duty inquiry in one significant respect. "[A]lthough 'directing the work of employees' is normally a managerial duty, it is not a managerial duty when it is performed concurrently with front-line law enforcement work." *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 829 (10th Cir. 2012). This does not mean that all emergency officials are automatically nonexempt. High-level police, fire, and emergency officials may still be exempt employees if their primary duty is not first-response work but rather managerial and administrative tasks. *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,122, 22,130 (Apr. 23, 2004) (listing such duties as including, among others, "evaluating personnel performance; enforcing and imposing penalties for violations of the rules and regulations; . . . . handling community complaints"). Thus, the fact-sensitive primary-duty inquiry remains dispositive. *See* Brief for Sec'y of Labor as Amicus Curiae Supporting Appellants, at 5, *Mullins v. City of New York*, 653 F.3d 104 (2d Cir. 2011).

The evidence demonstrates that Field Commanders have first-responder duties and that these duties are significant. However, the jury heard ample evidence that the Field Commanders engage in many of the activities listed as management in the regulations. *See* 29 C.F.R. §§ 541.102; 541.201(b). And the City's witnesses—Rodriguez, Shamard, and Director of Field Operations James Hawley—all testified that these duties were of greater importance to the overall structure and function of EMS than Plaintiffs' first-response work. The jury clearly found this testimony to be credible.

18

The fact that the representative Field Commanders testified they spend only two to three hours per day on their administrative duties does not contradict the verdict. The percentage of time spent on exempt versus nonexempt duties is not determinative of which duty is primary. *See id.* § 541.700(b). Rather, it is but one factor among many that guides the primary-duty inquiry. *Id.* § 541.700(a) (listing other factors as "the relative importance of the exempt duties as compared with other types of duties; . . . the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee").

Furthermore, the jury had a sufficient basis to conclude that Plaintiffs' supervisory and managerial responsibilities were not merely performed concurrently with "front-line" first-response work so as not to be considered management under the first-responder regulation. *See id.* § 541.3(b); *Maestas*, 664 F.3d at 829. In this respect, the Field Commanders are distinguishable from the police sergeants at issue in *Mullins v. City of New York*, which the Second Circuit found to be exempt as a matter of law under the first-responder regulation. *See* 653 F.3d 104 (2d Cir. 2011). Unlike Plaintiffs, the police sergeants were the second-lowest ranking officers in the NYPD, dispatched to all arrests in their unit and required to respond to all such calls. *Id.* at 108–09. The sergeants' exempt work consisted almost exclusively of supervision of lower-ranking officers while concurrently performing such duties. *Id.* at 118–19. The evidence here demonstrates that Field Commanders do significant management and administrative work separate and apart from the supervisory work they may do during the approximately four to six calls to which they respond each shift.

In summary, the facts do not point so strongly in Plaintiffs' favor that a rational jury had no choice but to conclude Plaintiffs are primarily first responders. *See Allstate Ins. Co.*, 501 F.3d at 405.

Accordingly, Plaintiffs are not entitled to judgment as a matter of law, and the court will adopt the jury's factual findings on the primary-duty issues.

## C.      *Remaining Elements of the Administrative and Executive Exemptions*

Neither party challenges the sufficiency of the evidence as to the jury's remaining factual findings. Having reviewed the record, the court agrees that there is more than ample evidence to support the jury's finding that the Field Commanders have the authority to make suggestions as to hiring, firing, and promotion that are given particular weight and that all Plaintiffs' primary duties includes the exercise of discretion and independent judgment with respect to matters of significance. *See* 29 C.F.R. § § 541.100(a), (b). Accordingly, the court will also adopt these fact findings.

## IV.  Remaining Motions

In addition to the parties' motions for judgment as a matter of law, Plaintiffs move the court for two additional rulings. First, Plaintiffs contend that if they are not entitled to judgment on the issue of the City's liability under the Act, the court should grant them a new trial. In light of the court's conclusion that the City failed to prove an essential element of its affirmative defense to Plaintiffs' overtime-compensation claims, Plaintiffs are entitled to judgment as to the City's liability under the Act. Therefore, the court will dismiss Plaintiff's alternative motion for a new trial.

Plaintiffs also request the court's reconsideration of its summary judgment against Plaintiffs Jakubauskas and Montgomery on the ground that the salary-basis issue affects all Plaintiffs. Although the court has discretion to revise an interlocutory order, such as a partial summary judgment, at any time prior to final judgment, the court declines to do so here. *See Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1414 (5th Cir. 1993). Plaintiffs had the opportunity to contest the salary-basis issue at the summary-judgment stage, but chose to challenge the City's

motion on other grounds. The fact that the salary-basis issues became disputed at trial does not entitle Plaintiffs to reverse their litigation strategy. The City had no reason to introduce any evidence as to Jakubauskas and Montgomery being paid on a salary-basis at trial, and the court will not hold the City liable for these Plaintiffs' claimed overtime compensation. Accordingly, the motion for reconsideration will be denied.

### V.  Conclusion

After careful consideration of the entirety of the evidence in this case, the court concludes that the Defendant City of Austin violated the Fair Labor Standards Act by failing to pay Plaintiffs one and one-half times their regular rate of pay for all hours worked over 40 in a work week. The court will deny the parties' motions for judgment as a matter of law, adopt the jury verdict, and render judgment as to the City's liability in Plaintiffs' favor. Additionally, the court will dismiss Plaintiffs' motion for a new trial and deny Plaintiffs' motion for reconsideration of its partial summary judgment. These rulings requires further proceedings on the issue of damages to the bench, and the court will set a scheduling conference regarding the damages phase of this litigation. Finally, the court will dismiss the City's pending Motion for Judgment on Partial Findings on Good Faith without prejudice to refiling after the scheduling conference ordered herein.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Entry of Partial Judgment on Jury Verdict (Clerk's Doc. No. 127) is **GRANTED** to the following extent:  the court hereby adopts the jury's finding that the City failed to prove it pays Plaintiffs on a salary basis.

**IT IS FURTHER ORDERED** that Plaintiffs' Renewed Motion for Partial Judgment as a Matter of Law (Clerk's Doc. No. 127) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Request for a New Trial (Clerk's Doc. No. 127) is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Reconsider Summary Judgment (Clerk's Doc. No. 127) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Entry of Judgment (Clerk's Doc. No. 126) is **GRANTED** to the following extent:  the court hereby adopts the jury's findings that Plaintiffs' primary duties are managerial, administrative, or a combination of the two; that the Field Commanders have the authority to make suggestions as to hiring, firing, and promotion that are given particular weight; and that all Plaintiffs' primary duties includes the exercise of discretion and independent judgment with respect to matters of significance.

**IT IS FURTHER ORDERED** that Defendant's Renewed Motion for Judgment as a Matter of Law (Clerk's Doc. No. 126) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **SET** for a **SCHEDULING CONFERENCE** on **Thursday, June 27, 2013, at 10:00 a.m.**, Courtroom 7, Seventh Floor, United States Courthouse, 501 W. 5th Street, Austin, Texas 78701.

**IT IS FINALLY ORDERED** that Defendant's Motion for Judgment on Partial Findings on Good Faith (Clerk's Doc. No. 107) is **DISMISSED WITHOUT PREJUDICE**.

SIGNED this _____ day of June, 2013.


_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE

22